UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN J. HAMER,<br>    Plaintiff, | :<br>:<br>:     PRISONER |
| v. | :     CASE NO. 3:11-cv-279 (SRU)<br>: |
| LEO ARNONE, et al.,<br>    Defendants. | :<br>: |

## INITIAL REVIEW ORDER

John J. Hamer, incarcerated and *pro se*, has filed an amended complaint under 42 U.S.C. § 1983 (2000). The named defendants are Commissioner Leo Arnone, Director of Population Management Lynn Milling, Deputy Commissioner Dzurenda, Warden J. Alves, Deputy Warden Adgers, former Warden Angel Quiros, former Deputy Warden Lauren Powers, Warden Maldonado, Deputy Warden Cyr, Lieutenants Panasci and Harris, Correctional Officers Dennis Marinelli, Vega, Mulligan, M. Rodriguez, Colouge, Beaulieu, DePalma and Feliciano, Nurse Garcia and Correctional Treatment Officer Ciaffaglions.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id*.

Under the Federal Rules of Civil Procedure and Second Circuit precedent, a *pro se* complaint is adequately pled if its allegations, liberally construed, could "conceivably give rise to a viable claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). The court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they]

suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. But "'[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)).

Hamer alleges the following facts. On October 4, 2010, while incarcerated at the Cheshire Correctional Institution, defendant Vega escorted him to the shower, He was handcuffed with his hands in front. When Hamer took two half-bars of soap, defendant Vega stopped him and made a derogatory comment. Hamer told defendant Vega that he did not appreciate the defendants' threatening attitude and comments and would report the incident to defendant Vega's supervisor. Defendant Vega used harassing language and threatened Hamer with harm. Hamer again took two half-bars of soap. Defendant Vega then punched Hamer in the right eye and slammed him against the wall. Defendant Mulligan joined them. He punched and kicked Hamer.

Defendant Mulligan called a code, falsely claiming that Hamer had assaulted defendant Vega. Defendants Panasci, Harris, Rodriguez, Colouge, Beaulieu, DePalma, Feliciano and Ciaffaglions responded to the code. Defendants Vega, Mulligan and Rodriguez picked Hamer off the floor and stood him up. Accusing Hamer of assaulting correctional staff, defendant

Panasci tightened the handcuffs while defendants Mulligan and Rodriguez exerted pressure causing Hamer to experience pain in his wrists. Defendant Harris denied Hamer's request to alleviate the pain and loosen the handcuffs. Defendants Harris and Panasci directed the other defendants to escort the plaintiff to a cell to be placed in restraints. During the escort, defendants Rodriguez and Mulligan exerted pressure on Hamer's wrists causing him pain.

Hamer was shackled and a black box tether chain was applied. Defendants Harris and Panasci ordered the restraints because Hamer allegedly struck defendant Vega with his handcuffs. However, defendant Vega never filed a report stating that Hamer struck him.

Hamer complained to defendant Nurse Garcia that the restraints were too tight; he had no range of motion and was in severe pain. Hamer also sought medication for the injuries to his eye, wrists and head. Defendant Garcia did not recommend that the restraints be adjusted or provide any pain medication. Defendants Harris and Panasci also ignored Hamer's complaints that the restraints were too tight.

Although Hamer was compliant with all rules throughout the first shift, defendants Harris and Panasci did not allow the restraints to be removed. Hamer spoke to defendant Adgers denying the assault charge and seeking adjustment of the restraints and pain medication. Defendant Adgers took no action. The restraints continued for approximately twelve hours. Hamer was unable to eat supper or use the toilet. No supervisors observed Hamer while he was restrained. Hamer was released from restraints at the end of the second shift. During the second shift, Hamer experienced headaches, dizziness and stomach cramps, as well as cuts, bruising and swelling of his wrists. Defendant Arnone has created, or permitted continued use of, Administrative Directive 6.5 on the use of force.

The following day, defendant Alves asked defendant Milling to transfer Hamer to Northern Correctional Institution and place him in administrative segregation. Hamer was not afforded notice and a hearing prior to his transfer in violation of Administrative Directive 9.4. Hamer wrote to defendant Powers, Quiros and Milling regarding the lack of a hearing and requested that he be returned to his housing unit. The requests were denied.

Hamer received a disciplinary hearing on the assault charge on October 20, 2010, beyond the time specified in the directives. No witnesses testified at the hearing. Hamer was not provided any documentation or evidence prior to the hearing. Hamer was found guilty and sanctioned with thirty days' confinement in punitive segregation.

Hamer received an administrative segregation hearing on November 24, 2010. The hearing officer relied on a memorandum from defendant Alves to defendant Milling and the incident reports relating to the assault charge. On November 30, 2010, defendant Milling authorized Hamer's placement on administrative segregation status. Defendant Dzurenda denied Hamer's appeal. Since his classification, defendants Arnone, Quiros, Powers, Maldonado, Cyr and Marinelli have not conducted the required periodic reviews of his status. While in administrative segregation, Hamer is subjected to dust particles from the ventilation system, denied one hour of exercise during the winter months, and must shower in leg irons. He is confined to his cell at least twenty-three hours per day. Hamer states that administrative segregation confinement has caused him to suffer recurring headaches, hallucinations, paranoia, nightmares, anti-social behavior disorder and an inability to stand or walk without difficulty.

Hamer states that he is asserting claims for violation of his rights under the Eighth and Fourteenth Amendments and is filing this action pursuant to 42 U.S.C. §§ 1983 and 1988. He

also references generally state law and the Connecticut Constitution. He seeks damages from the defendants in their individual capacities. Although Hamer states that he seeks declaratory and injunctive relief in the defendants' official capacities, he requests no specific injunctive remedy.

To prevail on a due process claim, Hamer must show that he had a protected liberty interest and that he was not afforded the requisite process before he was deprived of that interest. *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). To determine whether a prisoner had a protected liberty interest in avoiding administrative segregation, the Court must look to *Sandin v. Conner*, 515 U.S. 472 (1995), in which the Supreme Court held that state-created liberty interests of prisoners were limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84. The rule in this Circuit, since *Sandin*, is that a prisoner has a protected liberty interest "'only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation.'" *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997)) (omission in original); *see also Palmer v. Richards*, 364 F.3d 60, 64 & n.2 (2d Cir. 2004).

In the Initial Review Order of the original complaint, the court explained that Connecticut prisoners do not have a protected liberty interest in their classifications because the Commissioner of Correction has discretion to classify prisoners. *See Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Torres v. Howell*, 3:03cv2227 (MRK), 2006 WL 1525942, at *15-16 (D. Conn. May 30, 2006). Because Hamer does not have a protected liberty interest in his classification under federal or state law, he fails to state a cognizable due process claim based on his transfer to administrative segregation and his perceived deficiencies in the classification

hearing. *See Harris v. Meulemans*, 389 F. Supp. 2d 438, 443 (D. Conn. 2005) (prisoner had no constitutional right to any particular procedures during hearing because he lacked constitutionally protected liberty interest in classification); *Landry v. McLaurin*, No. CV074025898, 2010 WL 1233899, at *2-3 (Conn. Super. Ct. Mar. 2, 2010) (no denial of due process where inmate was sent to restrictive housing during investigation of excessive force claim). The claims against defendants Milling, Alves, Dzurenda, Arnone, Quiros, Powers, Maldonado, Cyr and Marinelli relating to Hamer's transfer to administrative segregation are dismissed pursuant to 28 U.S.C. § 1915A.[1]

Hamer alleges that defendant Arnone is responsible for the creation or continued use of the administrative directive governing use of force. He argues that the existence of that directive allowed correctional staff to use excessive force against him. As Commissioner of Correction, defendant Arnone is a supervisory official. Supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation). To establish a claim for supervisory liability, Hamer must demonstrate one or more of the following criteria: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant

---

[1] Hamer includes the description of his conditions of confinement in administrative segregation in an apparent attempt to demonstrate an atypical and significant hardship to support his due process claim under *Sandin*. *See* Am. Compl. ¶ 108. The court does not consider the complaint to raise a separate Eighth Amendment challenge to the conditions of confinement.

6

created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Hamer also must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). In *Iqbal* the Supreme Court held that a supervisor can be held liable only "through the official's own individual actions." 129 S. Ct. at 1948. That decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit has not revisited the criteria for supervisory liability following *Iqbal*. *See DeJesus v. Albright*, No. 08 Civ. 5804 (DLC), 2011 WL 814838,a t *6 n.4 (S.D.N.Y. Mar. 9, 2011). Even under the more expansive approach to supervisory liability, however, Hamer has not alleged facts to support claims of supervisory liability against any of the defendants.

Hamer includes allegations of procedural deficiencies in his disciplinary hearing. He references no defendant in connection with that claim and, although he names the hearing officer in the facts, he has not included the hearing officer as a defendant. Because Hamer fails to allege that any defendant was involved in his disciplinary hearing, any claim associated with the disciplinary hearing is dismissed pursuant to 28 U.S.C. § 1915A.

The existence of a prison directive authorizing the use of force in appropriate circumstances does not authorize correctional staff to use whatever force they wish. Hamer

7

alleges no facts suggesting that defendant Arnone was aware that the correctional officers involved in this action allegedly used excessive force. Hamer has not alleged facts demonstrating a causal link between defendant Arnone's approval of the directive and his injuries. Thus, the remaining claims against defendant Arnone are dismissed pursuant to 28 U.S.C. § 1915A.

Hamer also references 42 U.S.C. § 1988. Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with federal law where appropriate or state law. This section, however, does not provide an independent cause of action. *Moor v. Alameda County*, 411 U.S. 693, 702-06, *reh'g denied*, 412 U.S. 963 (1973). If Hamer is seeking attorneys' fees pursuant to section 1988(b), his claim also fails. A *pro se* litigant is not entitled to attorneys' fees under section 1988. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Any claim pursuant to 42 U.S.C. § 1988 is dismissed pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(i).

### Orders

It is hereby ordered that:

(1) All claims against defendants Arnone, Milling, Alves, Dzurenda, Quiros, Powers, Maldonado, Cyr and Marinelli are **DISMISSED** pursuant to 28 U.S.C. § 1915A. All claims pursuant to 42 U.S.C. § 1988 and any due process claims relating to the disciplinary hearing are dismissed pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(i). The case will proceed on Hamer's claims for use of excessive force and deliberate indifference to medical needs.

(2) **The Pro Se Prisoner Litigation Office shall** verify the current work addresses for each of the remaining defendants, Adgers, Panasci, Harris, Vega, Mulligan, Rodriguez,

Colouge, Beaulieu, DePalma, Feliciano, Garcia and Ciaffaglions, mail waiver of service of process request packets including the amended complaint to each defendant in his or her individual capacity within fourteen (14) days of this Order, and report to the court on the status of those waiver requests on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) **The Pro Se Prisoner Litigation Office shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on defendants Adgers, Panasci, Harris, Vega, Mulligan, Rodriguez, Colouge, Beaulieu, DePalma, Feliciano, Garcia and Ciaffaglions in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within fourteen (14) days from the date of this order and to file returns of service within twenty (20) days from the date of this order.

(4) **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the Amended Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) **The Pro Se Prisoner Litigation Office shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(6) **Defendants Adgers, Panasci, Harris, Vega, Mulligan, Rodriguez, Colouge, Beaulieu, DePalma, Feliciano, Garcia and Ciaffaglions shall** file their response to the

complaint, either an answer or motion to dismiss, within **seventy (70) days** from the date of this order. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims. They also may include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(8) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

Entered at Bridgeport, Connecticut this 7th day of July 2011.

　/s/ Stefan R. Underhill　
Stefan R. Underhill
United States District Judge